IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In the Matter of the Complaint of ARAMARK SPORTS AND ENTERTAINMENT SERVICES, LLC, | IN ADMIRALTY<br><br>MEMORANDUM DECISION AND ORDER DENYING HOWETH CLAIMANTS' MOTION TO DISSOLVE STAY OF PROCEEDING AND GRANTING ARAMARK'S MOTION FOR CIVIL CONTEMPT |
| TWIN ANCHORS MARINE LTD<br><br>   Third-Party Plaintiff,<br><br>CENTEK INDUSTRIES, INC.; WESTERBEKE CORP., MTI INDUSTRIES, INC., KEN SHULTZ, et al.,<br><br>   Third-Party Defendants. | Case No. 2:08-CV-976 TS |

I. INTRODUCTION

This is an Admiralty case, arising out of an incident on Lake Powell wherein several

1

persons—(the Howeth Group Claimants) renting Aramark's[1] houseboat were allegedly sickened by carbon monoxide, allegedly resulting in one fatality and many injuries.

Pursuant to Admiralty law, this Court entered an Order Restraining Suits. The Howeth Group Claimants' counsel nonetheless filed such a suit in Chicago, Illinois and then moved in the present case to lift the stay. Aramark moved for a contempt citation for the violation of the Order Restraining Suits.

The Court denies the Howeth Group Claimants' Motion to Lift the Stay, grants the Motion for Contempt, and awards attorney fees as a sanction for the contempt.

## II. BACKGROUND

Under the Limitation of Liability Act[2] and the Supplemental Admiralty Rules[3] a shipowner like Aramark may file a complaint for exoneration from and limitation of liability which basically interpleads the value of the vessel, plus costs, into this Court.[4] The resulting action, a limitation proceeding, determines if the shipowner is entitled to limited liability.

On December 19, 2008, Aramark filed the present action as such a limitation proceeding. Pursuant to the Supplemental Admiralty Rules, Aramark then gave notice to any claimants and the public and set a date to file claims. On January 20, 2009, the Court

---

[1] Aramark Sports and Entertainment Services, LLC.

[2] 46 App. U.S.C. §§ 181-89.

[3] Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (F.R.Civ.P.Supp.).

[4] F.R.Civ.P.Supp. F(1).

2

granted Aramark's Motion for Issuance of an Order Enjoining Suits and entered an Order enjoining any other pending proceeding making a claim against Aramark, its employees or its property based on the incident.[5] The Order Enjoining Suits clearly and unambiguously orders:

> 3. That the further prosecution of any and all actions, suits and proceedings already commenced and *commencement* or prosecution *thereafter of any and all suits, actions or proceedings of any nature and description whatsoever, in any jurisdiction, and the taking of any steps in or the making of any motion in such actions, suits or proceedings, against the Plaintiff, as aforesaid, or against any property or employee of Plaintiff, except in this action*, *to recover damages* for or in respect of any loss, damage, property damage and/or *injury caused by or resulting from the aforesaid incident* involving 75-foot Twin Anchors Excursion Houseboat "T-5", HUN QTALP009C606, Utah Registration UT9781AD, on June 24, 2008 on Lake Powell, as alleged in the Complaint, be and the same hereby *are restrained, stayed and enjoined until the hearing and determination of the instant action*.[6]

It is undisputed that the Howeth Group Claimants received notice of the Order Restraining Suits. They received Notice by service on their attorneys D. Rand Henderson, of Henderson Law Offices and Jeffrey D. Eisenberg, of Eisenberg & Gilcrest. Both of these law firms are located in Utah.

Not only did the Howeth Group Claimants receive notice of the Order Restraining Suits, they participated fully in the present case, filing claims,[7] seeking and obtaining an enlargement of time to file amended claims, and filing amended claims.[8] In their Answer

---

[5]Docket No. 8 (Order Directing Issuance of Notice and Restraining Suits).

[6]*Id.* (emphasis added).

[7]*E.g.* Docket No. 18, Answer and Claim.

[8]Docket No. 46.

3

and Claim filed on their behalf by attorney Gilchrist, the Howeth Group Claimants assert that they are entitled to have the "stay of proceedings issued by this Court lifted, and pursuant to the 'Savings to Suitors' clause of 28 U.S.C. § 1333, Claimants are entitled to litigate their claims in the state court of their choice."[9] Thus, the Eisenberg & Gilchrist firm clearly knew that (1) there was a stay imposed by this Court and (2) that it must be lifted before the Howeth Group Claiments' claims could be pursued elsewhere.

On June 12, 2009, the Howeth Group Claimants filed an action in the Northern District of Illinois against Westerbeke, Centek, and Twin Anchors, making claims arising from the incident (the First Howeth Action).[10] The Complaint and First Amended Complaint in that action were dismissed sua sponte for the failure to allege diversity jurisdiction or some other basis for federal jurisdiction.[11] The Complaints in the First Howeth Action were signed on their behalf by an attorney in a law office in Chicago, Illinois, who represented that he would be serving as local counsel.[12] On July 23, 2009, three attorneys from the Eisenberg & Gilchrist firm applied for pro hac vice admission in the First Howeth Action, including Mr. Eisenberg, who had been served with the Order Restraining Suits on behalf

---

[9]Docket No. 18 at 3 (Fifth Affirmative Defense).

[10]Case No. 1:09-CV-03584 in the Northern District of Illinois. The manufacturer Defendants Westerbeke, Centek and Twin Anchors, had already filed answers and cross and counterclaims in the present case.

[11]As noted *infra*, the First Howeth Action was eventually transferred to Utah and is now renumbered Case No. 2:10-CV-221 TS. The cited docket entries for the case while the action was pending in Illinois appear as attachments Nos. 3 (Minute Entry) and 11 (Minute Entry) at Docket No. 2 in Case No. 2:10-CV-221 TS. The Court takes judicial notice of the docket in the First Howeth Action.

[12]That Local Counsel moved to withdraw on September 22, 2009.

4

of his firm and his clients and Mr. Gilchrist who noted the Order Restraining Suits in the Answer he filed herein.[13] The pro hac motions were granted on July 23 and 24, 2009.[14] On July 27, 2009, the First Amended Complaint in First Howeth Action was dismissed for the continuing failure to allege a basis for jurisdiction.[15] That dismissal was with leave to file an amended complaint adequately alleging jurisdiction.[16] On August 5, 2009, Mr. Henderson, the other Utah attorney served with the Order Restraining Suits, applied for pro hac admission in the First Howeth Action and it was granted the next day.

On August 10, 2009, despite this Court's Order Restraining Suits in other courts, the Howeth Group Claimants filed a Second Amended Complaint in their First Howeth Action naming Aramark as a defendant.[17]

Aramark responded to the Second Amended Complaint by notifying the Howeth Group Claimants that it would file a contempt motion unless the Chicago action was dismissed. Instead of dismissing Aramark from the First Howeth Action, the Howeth Group Claimants filed two matters in the present case. First, on September 2, 2009, the Howeth Group Claimants filed a unilateral Stipulation stating they will not challenge this Court's jurisdiction over the limitation proceeding and will not seek to enforce any judgment received in the Chicago case until this proceeding determines Aramark's rights in the

---

[13] *Id*. at attachments 6 (Kendell), 7 (Eisenberg), and 8 (Gilchrist).

[14] *Id*. at attachments 9 and 10.

[15] *Id*. at attachment 11 (Minute Entry).

[16] *Id.*

[17] They also named as a defendant therein Aramark Corporation.

5

limitations proceeding. An Amended Stipulation was subsequently filed on their behalf. Significant for the purpose of the present Motions is the fact that the manufacturing claimants did not join in the Stipulations. Both Stipulations are signed on behalf of the Howeth Group Claimants by their attorney, Mr. Gilchrist. Second, on September 14, 2009, the Howeth Group Claimants filed the present Motion to Dissolve Stay of Proceedings.

Aramark responded in both cases. On September 1, 2009, it filed in the First Howeth Action a Motion to Dismiss or to Transfer Venue to Utah. That Motion raised the issue of the violation of the Order Restraining Suits. In the present case, on September 22, 2009, Aramark filed a Motion for Contempt Sanctions seeking an award of attorney fees incurred as a result of having to bring the contempt motion in this Court as well as having to file a motion to dismiss or transfer venue in the 2009 Howeth Action.

Westerbeke joined in Aramarth's contempt Motion and asks for an award of fees it incurred in defending the case in Chicago. Westerbeke also joins in Aramark's opposition to lifting the stay.

Thus, the matters pending before the Court are the Howeth Group Claimant's Motion to Lift the Stay and Aramark's Motion for Contempt.

### III. STATUS OF THE FIRST HOWETH ACTION

Subsequent to the hearing on the present Motions, the court in the First Howeth Action granted, in part, Aramark's Motion to dismiss or to transfer venue and transferred venue of the case to this Court.[18]

---

[18]The Case was renumbered upon transfer and is now Case No. 2:10-CV-221 TS.

Once the case was transferred to Utah, Marine Technologies, Inc. (MMI) filed a Motion to Dismiss.[19] Then Aramark filed a Motion to Dismiss or Stay Proceedings[20] in which Twin Anchors and Westerbeke joined.[21] The Howeth Group Claimants continued to oppose dismissal of Aramark from their First Action after it was transferred to this district.[22]

Aramark also filed a separate Motion to Stay or Dismiss Centek's Cross-Claims.[23] The Howeth Group Claimants recently filed a Motion to Amend their Complaint to address MMI's Motion to Dismiss.

On July 12, 2010, this Court granted Aramark's Motion to Stay the First Howeth Action pending resolution of this case.

## IV. DISCUSSION AND CONCLUSIONS

A. Stay Motion

The Court will address the stay issue first. The most succinct explanation of the issue at the heart of the Motion to Lift the Stay is found in the case of *In re Kirby Inland Marine, L.P.*,[24]

Federal courts have exclusive admiralty jurisdiction over actions to determine

---

[19]Docket No. 26, Case No. 2:10-CV-221 TS.

[20]Docket No. 37, Case No. 2:10-CV-221 TS.

[21]Docket Nos. 45 and 48, Case No. 2:10-CV-221 TS.

[22]Docket Nos. 58, at 13-19, Case No. 2:10-CV-221 TS.

[23]Docket No. 41, Case No. 2:10-CV-221 TS.

[24]237 F.Supp.2d 753, 754 -755 (S.D.Tex. 2002).

whether a vessel owner is entitled to limited liability. As in all cases brought pursuant to admiralty jurisdiction, there is no right to a jury trial in limitation proceedings. But the statute granting admiralty jurisdiction to federal courts also saves to suitors "all other remedies to which they are otherwise entitled." (28 U.S.C. § 1333(1)). Courts interpret this "saving to suitors" clause as "evincing a preference for jury trials and common law remedies in the forum of the claimant's choice." Thus, tension exists between exclusive admiralty (non-jury) jurisdiction in limitation proceedings and the preferences suggested by the saving to suitors clause. The Fifth Circuit has resolved this tension by holding that "the district court's primary concern is to protect the shipowner's absolute right to claim the Limitation Act's liability cap, and to reserve adjudication of that right in the federal forum." But federal courts have identified two situations in which a district court must allow a state-court action to proceed, despite a pending limitation action: (1) when the total amount of the claims does not exceed the vessel's declared value; and (2) when *all claimants* stipulate that the federal court has exclusive jurisdiction over the limitation action, and *all claimants* stipulate that they will not seek to enforce a judgment exceeding the declared value until the federal court has determined the shipowner's rights in the limitation action.

* * *

The Court notes that [one group of claimants] have done everything they can do to work within the spirit of the Limitation Act, but [those claimants] do not have complete control over [the shipowner's] potential liabilities in the state-court case. For example, if [another claimant] is found liable to the [stipulating claimants] it will seek to recover its defense costs and attorneys' fees from [shipowner]-liabilities over which the [the stipulating claimants] have no control. Thus, the [stipulating claimants'] stipulations cannot ensure [the shipowner's] absolute right to limit its liability, and this Court cannot lift the stay.[25]

It is the second exception—a stipulation by claimants—that is at issue in this case as a basis to lift the stay. The Howeth Group claimants argue that a stipulation by less than all of the claimants is sufficient to protect the rights of the shipowner in this limitations proceeding. Aramark and Westerbeke do not dispute that all circuits to have addressed

---

[25] *Id*. at 754 -55 (citations omitted and emphasis in original).

8

the issue have allowed the stay to be lifted if there is a sufficient stipulation. However, they argue that this Court should, like the court in the *Kirby Island Marine* case, follow the majority position followed by the Eleventh,[26] Fifth,[27] Second,[28] and Third[29] Circuits that the shipowner is only adequately protected by a stipulation signed by "all claimants."

The Howeth Group Claimants argue that this Court should follow the position of the of the Sixth[30] and Eighth[31] circuits that the possibility of a further suit by other, non-stipulating, claimants for contribution or indemnity does not create a situation of multiple claims.

The Court finds that the stipulation-by-claimants exception would not serve its purpose if it does not protect the right of a shipowner to a determination of its limited liability. Under Admiralty law, if the value of the vessel is not accepted as the limit of the owner's liability, the claimants could proceed in another case, with their jury right unimpaired. But that determination must be made first here in this Admiralty case. If it were not, the shipowner would always need to appear and fully defend in the other case

---

[26] *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1036-37 (11th Cir. 1996) (explaining the public policy behind the Limitation Act is to induce capitalists to invest in the maritime industry).

[27] *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996).

[28] *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750 (2d Cir. 1988).

[29] *Gorman v. Cerasia*, 2 F.3d 519, 527 (3d Cir. 1993).

[30] *S & E Shipping Corp. v. Chesapeake & Ohio Ry.*, 678 F.2d 636 (6th Cir. 1982).

[31] *Universal Towing Co. v. Barrale*, 595 F.2d 414 (8th Cir. 1979).

because it would not know until it was too late whether its liability would be limited.[32]

Recognizing the circuit split on this issue, and that there is no controlling case law from the Tenth Circuit, the Court finds that the majority position followed by the Eleventh, Fifth, Second, and Third Circuits is better reasoned. Accordingly, the Court finds that the shipowner is only adequately protected by a stipulation signed by "all claimants." Because there is no such stipulation signed by all claimants in this case the Howeth Group Claimants' stipulation cannot ensure the shipowner's right to limit its liability, and this Court cannot lift the stay.

Further, the Court finds that the argument of the Howeth Group Claimants that Aramark will be protected against multiple claims by their stipulation rings hollow in view of their law firm's past actions. That law firm was not deterred from filing an action against Aramark by an Order from this Court that was served on one named partner and known to the other. In such circumstances, it does not seem likely that their voluntary stipulation will be any less of a deterrent to further litigation and multiple claims.

Having determined that the stay will not be lifted, the Court turns to the issue of contempt.

B. Contempt Motion

"To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had

---

[32]*Holly Marine*, 270 F.3d at 1090.

knowledge of the order, and that the defendant disobeyed the order."[33] "Civil contempt may be used 'to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance' with a court order."[34] "[O]nce a plaintiff has established the elements of contempt by clear and convincing evidence, it need only prove damages by a preponderance of the evidence."[35] A "finding of willfulness is not required to award attorney fees in a civil contempt proceeding."[36]

Present impossibility is a defense to a contempt proceeding and the alleged contemnor has the burden of production on this defense.[37] However, to prevail on this inability defense, the contemnor must establish by facts (and not just assertions) that he or she has made all reasonable and good faith efforts to comply with the order.[38]

Once the movant, in this case Aramark, has made a prima facie showing that the Howeth Group Claimants did not comply with the Court's orders, the burden shifts to the alleged contemnors to produce evidence justifying their noncompliance. They may defend against a finding of contempt on the ground that they are unable to comply with the orders or that they made a good faith effort to do so.

---

[33]*Reliance Ins. Co. v. Mast Const. Co.,* 159 F.3d 1311, 1315 (10th Cir. 1998).

[34]*Id*. at 1318 (quoting *O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F.2d 1204, 1211 (10th Cir. 1992).

[35]*Id.*

[36]*John Zink Co. v. Zink*, 241 F.3d 1256 1261-62 (10th Cir. 2001).

[37]*United States v. Rylander*, 460 U.S. 52 (1983).

[38] *CFTC v. Wellington*, 950 F.2d 1525, 1528 (10th Cir. 1992).

Here, counsel for the Howeth Group Claimants only argue that (1) their filing of the First Howeth Action without first obtaining a lift of the stay was "a mistake," and (2) that this case is not adversely impacted because Aramark's limitation has not yet been decided here. In support of their mistake theory, they submit the affidavit of counsel, Mr. Gilchrist, who, in a masterpiece of vagueness, avers as following: The Eisenberg & Gilchrist law firm divided the responsibilities for representing the Howeth Group Claimants. Mr. Gilchrist worked on this Admiralty case while unnamed "other members" of the firm "were in the process of investigating and preparing a personal injury and wrongful death case."[39] Mr. Gilchrist was unaware that the First Howeth Action was filed, dismissed and re-filed "until after the Summons had been issued."[40] He was "told that we received a motion to dismiss the case in Chicago claiming an alleged deficiency in venue. [He] had never read nor reviewed the complaint that was filed in" Chicago.[41] He nonetheless decided to file a stipulation in the present case that no action would be taken until the limitations case was resolved.[42] He "doesn't remember who" he talked to about filing the responses in the Chicago case, but he wrote to Aramark's counsel about it, suggesting that "if the points are well taken" that he might stipulate to dismiss or move that case.[43] Aramark's counsel gave him only two days to decide to dismiss Aramark from the First Howeth Action or a contempt

---

[39]Docket No. 77, Attachment 3, Gilchrist Aff. at ¶ 2-3.

[40]*Id*. at ¶ 4.

[41]*Id*. at ¶ 5.

[42]*Id*. at ¶ 6.

[43]*Id*. at ¶ 7.

12

action would be filed.[44]  Rather than respond to Aramark within the two working days, he finished a "previously" researched and drafted motion to lift the stay and filed it herein by the next work day.[45]  The law firm does not submit an affidavit from Mr. Eisenberg who received the Order Restraining Suits on behalf of his clients and who, like Mr. Gilchrist, appeared as counsel in the First Howeth Action prior to the filing of the Second Amended Complaint naming Aramark.

The Howeth Group Claimants also argue that if contempt is found, no fees are warranted because (1) the issue of the stay would have had to be eventually decided anyway, and (2) the contempt motion should not have been filed until after the stay issue was decided.

The Court finds that the Motion seeks contempt citations against both the clients, the Howeth Group Claimants, and their counsel.[46]  The Court finds no basis for finding the Howeth Group Claimants in contempt.  There is no information that their counsel ever made them aware of the Order Restraining Suits or consulted them about the decision not to dismiss the claims filed against Aramark in violation of that Order.

---

[44]*Id*. at ¶ 8.  The Court notes that the letter actually says that Aramark was in the process of filing a Motion for Contempt as a result of the violation of the order but that in view of the Howeth Group Claimants' counsel's suggestion that they may stipulate to move or dismiss the case that Aramark would delay filing until the following Tuesday.

[45]*Id*. at ¶ 9.

[46]Docket No. 62, at 2 (Aramark's request that "the Court issue an Order finding Claimants *and their counsel* in civil contempt and imposing such sanctions are as appropriate to enforce the order and to compensate Aramark for Claimants' noncompliance") (emphasis added).

The Court finds by clear and convincing evidence that there was a valid court order staying other proceedings, that Mr. Eisenberg and Mr. Gilchrist had notice of that order, and that they violated that order. They violated the order by (1) filing the Second Amended Complaint against Aramark and (2) refusing to dismiss Aramark from that case.

Although counsel argue that the stay issue should have been resolved before the contempt action was filed, they have the cart before the horse. Because there is a valid court order staying other cases against Aramark based on this incident, the Howeth Group Claimants' counsel should have first sought to lift that stay before they filed against Aramark in another action. As shown by their Answer, they knew this was the correct procedure. The Court notes that Mr. Gilchrist never avers that he did not know that the Second Amended Complaint was to be filed against Aramark in a case in which he had already made an appearance. Instead, he carefully attempts to rely on being unaware of when it was actually filed and not having actually read it. He nonetheless knew it was filed, and knew of the Order Restraining Suits but failed to take any action to bring his clients into compliance with that Order.

Reviewing the record, it is clear that the law firm decided to file first despite the Order and gamble that the stay would be lifted. In these circumstances, the Court finds that it is counsel, who both[47] had actual knowledge of the Order Restraining Suit but who still filed and maintained the action against Aramark, who are in contempt.

---

[47] There is nothing in the record to suggest that the third attorney from the firm who appeared in the First Howeth Action had actual knowledge of the Order Restraining Suit. There is nothing in the record regarding Mr. Henderson's role, if any, in filing and maintaining the action.

14

There is absolutely no showing that counsel were unable to comply with the Order at any time before the contempt Motion was filed. The assertion that a two-work-day deadline was unworkable is not believable. Counsel had actual knowledge of the Order Restraining Suits, and could have chosen (1) not to file the Second Amended Complaint or (2) to bring themselves and their clients into compliance at any time thereafter by simply notifying Aramark that they intended to do so. Instead, counsel decided to use the time to continue their gamble that the stay would be lifted despite the contempt.

As noted above, a finding of willfulness is not required to award attorney fees in a civil contempt proceeding. The Court finds that an award of attorney fees is necessary to compensate Aramark for injuries resulting from the contemnors' noncompliance with this Court's order. Aramark has filed an affidavit briefly setting forth the scope of the effort, the number of hours expended, the hourly rates claimed, and other pertinent information. The Court finds that Aramark incurred reasonable attorneys fees in the amount of $5,000 were incurred as a result of the contempt.

Because the Order Enjoining Suits did not specifically enjoin any actions against Westerbeke, the Court will deny its application for attorney fees.

## V. ORDER

Based on the above, it is

ORDERED that the Howeth Group Claimants' Motion to Dissolve Stay of Proceedings (Docket No. 52) is DENIED. It is further

ORDERED that Aramark's Motion for Civil Contempt (Docket No. 58) is GRANTED and Aramark is awarded attorneys fees against Mr. Eisenberg and Mr. Gilchrist in the

15

amount of $5,000. It is further

ORDERED that this Limitation Action shall proceed in accordance with the Supplementary Admiralty Rules. Counsel are directed to meet and confer regarding a stipulated scheduling order and submit the same to the Court within 14 days of the entry of this Order. It is further

ORDERED that the status conference set for Wednesday, July 21, 2010, at 2:00 p.m. is VACATED.

DATED   July 20, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge