IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In the Matter of the Complaint of<br><br>**ARAMARK SPORTS AND ENTERTAINMENT SERVICES, LLC**,<br><br>as owner, or owner *pro hac vice*, of the 75-foot Twin Anchors Excursion Houseboat "T-5" for Exoneration from or Limitation of Liability | **IN ADMIRALTY**<br><br>**OPINION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**<br><br>Case No. 2-08-cv-976<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

Claimant and Third-Party Plaintiff Twin Anchors Marine Ltd. ("Twin Anchors") moved to dismiss this action on the grounds of lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Docket No. 126, filed December 22, 2010. Third-Party Defendant Westerbeke Corporation ("Westerbeke") has joined in the motion (Docket No. 155, filed February 7, 2011), which joinder is not opposed. The motion is opposed by Plaintiff Aramark Sports and Entertainment Services, LLC ("Aramark"). Docket No. 135, filed January 19, 2011. The complaint in this action, brought under the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.* ("the Limitation Act"), invokes the Court's admiralty and maritime subject-matter jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure. This motion involves an issue of law that is submitted to the magistrate judge by the parties' consent. Docket no. 167, filed February 11, 2011. The motion to dismiss was heard March 9, 2011. Present at the hearing were Julianne Blanch and David Loh for Aramark, Jeffery Williams and Matthew Vafidis for

Twin Anchors, Phillip Ferguson for Third-Party Defendant Centek Industries, Inc., Jeff Eisenberg for Claimants (Howeth), Dennis Conroy for Westerbeke, and Greg Sanders and Patrick Burt for Third-Party Defendant MTI Industries.

For the reasons set forth herein, the magistrate judge finds that this Court lacks subject-matter jurisdiction over this action. The motion to dismiss is therefore granted.

Aramark has alleged four grounds for jurisdiction, which are addressed in turn:

First, the Admiralty Extension Act, 46 U.S.C. § 30101, does not confer an additional basis in a Limitation Act proceeding for admiralty subject-matter jurisdiction. The Admiralty Extension Act does not create a new basis for jurisdiction other than to extend the reach of the Act to permit claimants who suffered injury to land-based improvements.

Second, the Limitation Act does not, by itself, provide an independent basis for admiralty subject-matter jurisdiction that is separate and apart from the traditional tests for maritime jurisdiction. The courts that have addressed this issue are fairly uniform on this point. *See, e.g, Seven Resorts v. Cantlen*, 57 F.3d 771, 773 (9th Cir. 1995). The case referred to by Aramark, *Richardson v. Harmon*, 222 U.S. 96 (1911), and the cases that have followed *Richardson*, were decided prior to the line of decisions beginning with *Executive Jet Aviation Inc. v. City of Cleveland*, 409 U.S. 249 (1972).

*Executive Jet*, and the cases after it require a "nexus" between the alleged wrong and a traditional maritime activity for jurisdiction to be found. The historic field of admiralty law and jurisdiction was delimited in *Executive Jet* by the nexus requirement. As the world has become more congested and more complex there is now more activity at the margins of our navigable waters. This is similar to the issues for cities and suburbs which have deer and cougars coming down from the mountains because of urban expansion. For example, the factual circumstance in

*Executive Jet* (an airplane crashing into navigable waters) would never have been considered in an admiralty court before 1900. The nexus test ensures that admiralty law should apply in traditional maritime activity and no further.

Third, Aramark's claim for breach of contract jurisdiction is inconsistent with the Limitation Act's requirement of a lack of privity. The Act provides that claims subject to limitation are those arising from any loss, damage or injury incurred "without the privity or knowledge of the owner." 46 U.S.C. § 30505(b). The Limitation Act does not apply in cases in which the ship owner is in privity with the injured party.

Fourth, Aramark claims there is maritime tort jurisdiction. In order to invoke federal admiralty jurisdiction over a tort claim, a party must satisfy conditions of location and connection. In applying the location test, a court must determine "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Aramark Leisure Services v. Kendrick,* 523 F.3d 1169, 1174 (10th Cir. 2008) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995)). The connection test has two parts. First, the court "must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce." *Id.* (quoting *Grubart*, 513 U.S. at 534). Second, the court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (quoting *Grubart*, 513 U.S. at 534). The parties agree that the locality test is satisfied, and that there is a substantial relationship between the activity giving rise to the incident and a traditional maritime activity. The issue in this case concerns the requirement of the maritime tort analysis that the incident have a "potentially disruptive impact on maritime commerce." *Aramark Leisure Services*, 523 F.3d at 1174 (quoting *Grubart*, 513

U.S. at 534. This is a question of law, not – as some parties suggested – a matter of discretion. The parties agree that the court must formulate a description of the incident "at an intermediate level of possible generality." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 538 (1995).

With this principle in mind, the formulations from other cases are instructive:

In *Sisson v. Ruby*, 497 U.S. 358 (1990), the Supreme Court defined the incident as "a fire on a vessel docked at a marina on navigable waters." *Id.* at 363. Important in the *Sisson* case, even though not articulated in that same sentence, were the facts that the marina (where the boat was docked) burned and nearby boats were affected. The Supreme Court has included several elements in its formulation: location; effect on other vessels or structures that are used in maritime commerce; movement (lack of movement there -- the subject vessel was docked); and, as was specifically referred to in *Sisson*, the proximity of other vessels.

The parties argue *H20 Houseboat Vacations Inc. v. Hernandez*, 103 F.3d 914 (9th Cir. 1996). It is a little seductive to suggest that the similar facts in *H20* should control the outcome of this case. Cases are not decided on factual similarities. The facts may illustrate the application of legal principles which decide cases.

In *H20 Houseboat Vacations*, the Court of Appeals' formulation of the incident was: "the emission of carbon monoxide fumes inside a contained space within a houseboat tied to the shore." *Id.* at 916. Again, the formulation refers to the lack of movement: the houseboat is "tied to shore." The identification of the houseboat is important: a houseboat may be described as a water-based structure with a land-based, or similar, purpose. The Court of Appeals appears to have chosen the word "houseboat" deliberately. The reference to "inside a contained space" has to do with the scope of the incident, an issue in *H20 Houseboat Vacations*.

The magistrate judge takes note of other examples of formulations in cases referred to in the parties' papers. In *Just v. Chambers*, 312 U.S. 383, 384 (1941) the court described "carbon monoxide gas poisoning alleged to have occurred on board the vessel . . . . cruising at the time within the territorial limits of the State of Florida." The vessel was moving in a navigable path. In *Lewis v. Sea Ray Boats, Inc.*, 65 P.3d 245, 251(Nev. 2003) "a single pleasure boat [was] moored at an isolated location at night." Night is not a traditional time for travel, the boat was at an isolated location, and the boat was moored -- the equivalent of being anchored. In *In re: Skipperliner Industries Inc.*, No. 00-C-0730-C, 2002 WL 32348827, at *8 (W.D.Wis. Jan. 31, 2002) (unpublished) the description was "carbon monoxide poisoning on a vessel anchored to an island in a navigable river." The vessel was anchored. The poisoning occurred on the vessel, but the vessel was in a navigable river and the court in *Skipperliner* specifically found there to be a potential to impede traffic because of the craft's location.

Finally, turning to the 10th Circuit case: In *Aramark Leisure Services v. Kendrick*, 523 F.3d 1169 (10th Cir. 2008), the incident was described as "recreational boating" on "the navigable waters of Lake Powell," navigable waters, "when they collided with a canyon wall or cliff;" (id. at 1174): movement, impact, and location in the flow of travel were all described. In Judge Campbell's case, *In Re: Aramark Sports and Entertainment Services, LLC*, No: 2-09-CV-637-TC, 2010 WL 770065 (D.Utah, Mar. 5, 2010) (unpublished), the formulation of the incident was: "a boat sinking while carrying passengers who need to be rescued." Id. at *1. Similarly, this formulation involves a vessel in the way of travel and underway, and the potential of interference as a result of rescue activities.

Therefore, the magistrate judge concludes that any formulation of the incident in this case needs to include the location. It needs to make reference to movement – whether the vessel is in the way of travel or traffic – and the proximity of the subject vessel to other vessels.

Aramark's proposed formulation is: "carbon monoxide poisonings aboard vessels operating in the navigable waters of the United States." Aramark's Memorandum of Law in Opposition to Twin Anchors' Motion to Dismiss Aramark's Limitation Action for Lack of Admiralty and Maritime Jurisdiction at 5, docket no. 140, filed January 20, 2011. This statement is too broad. This incident did not involve a class of "vessels": this is a houseboat. There was only one houseboat involved. The houseboat was not in the flow of traffic or in an area of transit. The poisoning occurred inside the vessel. The genesis of the carbon monoxide aside, the people were inside the vessel at the time of the incident. There is a dispute in the report about whether there was a window open or not, but clearly the incident was inside the houseboat. The Aramark formulation does not describe the incident "at an intermediate level of possible generality." *Jerome B. Grubart, Inc*, 513 U.S. at 538. The magistrate judge prefers Westerbeke's formulation of the incident: "Carbon monoxide exposure on a single vessel anchored alone in an isolated cove on a navigable lake." Westerbeke Corp.'s Memorandum in Support of Its Motion for Joinder in Twin Anchors Marine, Ltd.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction at 5, docket no. 156, filed February 7, 2011. Accordingly, the magistrate judge's formulation is: "Carbon monoxide exposure inside a single houseboat anchored alone in an isolated cove on a navigable lake." This formulation has the elements of proximity to other boats; the stationary nature of the vessel; its location outside the flow of usual navigable travel; and the type of event.

Under the proper formulation, there is no admiralty subject-matter jurisdiction in this case because this incident does not have a "potentially disruptive impact on maritime commerce." The motion to dismiss (Docket No. 126) is granted. This case is dismissed by this Order.

SO ORDERED.

Dated this 11th day of April, 2011.

_____
David Nuffer
United States Magistrate Judge